IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STEVEN BENNETT BINGHAM, TROY WENDALL HANSEN, BRIAN B. TUCKER,<br><br>Defendants. | **MEMORANDUM OPINION & ORDER**<br><br>Case No. 2:04-CR-170<br><br>Judge Dee Benson |

## INTRODUCTION

Before the Court is defendant Brian B. Tucker's motion to suppress evidence. Defendant asserts that statements implicating him and evidence seized from his home should be excluded because the search warrant was invalid in that it was based on unreliable information.[1] In response, the government argues that there was sufficient reliable information to issue the search warrant. The Court heard testimony and oral argument regarding defendant's motion on April 22, 2005, and the parties' supplemental briefing was completed on May 16, 2005. After reviewing all the factual materials presented in light of the relevant law, the Court DENIES defendant's motion to suppress for the reasons set forth below.

---

[1]
     In his initial brief, defendant also argued that Troy Hansen's statements and evidence seized from defendant's home should be suppressed because the statements were taken in violation of Hansen's *Miranda* rights. However, defendant abandoned this position during the April 22, 2005, hearing. (Transcript of Hearing, April 22, 2005 ("Tr.") at 4-7.) As such, the Court will not address this argument.

## BACKGROUND

On February 20, 2004, an armed robbery occurred at Far West Bank in Orem, Utah. (Tr. at 9). Shortly thereafter, Sgt. Bill Young ("Sgt. Young") of the Orem Department of Public Safety received a call from an individual indicating that a confidential informant, later identified as Tony Schiro ("Schiro"), knew who committed the robbery. (*Id.* at 9). In early March, 2004, Sgt. Young spoke with Schiro, who stated that he and Roger Gaisford ("Gaisford") procured vehicles from Colorado, as well as a white Ford Taurus from Salt Lake City, to use in the robbery. (*Id.* at 10). Schiro also told Sgt. Young that one of the getaway cars that had been taken to the west desert area near Tooele County and burned. (*Id.*). Schiro told Sgt. Young that he should speak with Billy Topham ("Topham"). (*Id.*).

On March 9, 2004, Sgt. Young located Topham and took him into custody for reasons unrelated to the robbery. (*Id.* at 11). Topham waived his *Miranda* rights, and told Sgt. Young that he was with Gaisford and Troy Hansen ("Hansen") when they took a blue Ford Probe to the west desert area near Tooele County and set fire to the vehicle. (*Id.*). Sgt. Young later located this vehicle and, based on the VIN number, determined that it was registered in Colorado. (*Id.* at 12). Sgt. Young later showed a picture of the vehicle to witnesses of the robbery, who confirmed that it was the getaway car. (*Id.* at 12-13).

Based upon the information provided by Topham, Sgt. Young located Gaisford and placed him in custody for questioning on March 9, 2004. Gaisford waived his *Miranda* rights and told Sgt. Young that he went to Colorado and brought vehicles back to be used in the robbery. (*Id.* at 14). Gaisford implicated Hansen and a man named "Steve." (*Id.* at 14, 17). Gaisford also stated that a man named Tucker who drove a red pickup truck was Hansen's boss. (*Id.*). This was the first time Tucker's name was mentioned in Sgt. Young's investigation. (*Id.*

2

at 15). Gaisford also confirmed the information about the blue Ford Probe which was initially provided by Schiro and Topham. (*Id.* at 14). Finally, Gaisford told Sgt. Young that he was involved in the procurement of a stolen vehicle that was used in the Herriman robbery.[2] (*Id.* at 16).

Later that evening, Sgt. Young heard a dispatch indicating that there was a medical emergency involving Troy Hansen ("Hansen") at The Fairfield Inn in Orem, Utah. Based upon the information provided by Gaisford implicating Hansen, Sgt. Young proceeded to the inn and found Hansen in a room. (*Id.* at 17). Hansen indicated that the room was registered under Steve Bingham ("Bingham"). (*Id.*). Based upon Gaisford's earlier statement that a man named "Steve" was involved in the robberies, Sgt. Young also located Bingham at the inn. (*Id.* at 17-18). Bingham agreed to accompany Sgt. Young to the police station for questioning. (*Id.* at 19). Bingham waived his *Miranda* rights and confessed that he was involved in both of the bank robberies. (*Id.* at 21). Bingham corroborated the information previously provided by Schiro, Topham, and Gaisford about the vehicles used in the robberies. (*Id.* at 23). Bingham implicated Hansen, and a man who wore a baseball cap and dark glasses, and picked him up in a truck at a 7-11 store following the Herriman robbery. (*Id.* at 22).

Following his interview with Bingham, Sgt. Young found large amounts of cash in Bingham's hotel room at the inn. (*Id.* at 18). Sgt. Young obtained a search warrant for Bingham's vehicle and found ammunition for a .40 caliber handgun and a .45 caliber handgun.

---

2

    On March 5, 2004, a second armed robbery occurred at Smith's grocery store in Herriman, Utah. During the course of their investigation, officers determined that it was committed by the same individuals involved in the Far West bank robbery. (*Id.* at 20).

(*Id.*).  During the robbery at the Far West Bank, the suspects used a shotgun, a .40 caliber handgun, and a .45 semi-automatic gun.  (*Id.*).

Later that same evening, Sgt. Young, Sgt. Chris Hendrickson ("Sgt. Hendrickson"), and FBI Agent Greg Rogers interviewed Hansen at the Orem Department of Public Safety.  (*Id.* at 23).  Hansen had suffered some minor lacerations to his head and two of his front teeth were broken following an altercation with his girlfriend's ex-boyfriend earlier that evening.  (*Id.* at 23-24).  Sgt. Hendrickson read Hansen his *Miranda* rights, and Hansen agreed to waive his rights and speak with the officers.  (*Id.* at 24-26).  Hansen stated that he was involved in the bank robberies in Orem with Bingham.  (*Id.* at 26).  Hansen implicated Tucker as the mastermind of the robberies in Orem and Herriman.  (*Id.*).  Hansen told the officers that Tucker drove a red truck with the name of his business on the side of the truck.  (*Id.*).

Hansen corroborated the information previously provided by Topham that Tucker had made arrangements to have them go to Colorado to procure vehicles to use in the robberies.  (*Id.* at 26-27).  Hansen also corroborated the information provided by Gaisford about the use of stolen vehicles in the Herriman robbery.  (*Id.* at 27).  Finally, Hansen corroborated the information provided by Bingham, confirming that Tucker picked them up at a 7-11 store in the truck after the Herriman robbery.  (*Id.*).

Based upon the information provided by Gaisford, Bingham, and Hansen, the officers located Tucker at his residence in Provo Canyon.  (*Id.*).  At approximately 4:25 a.m., Sgt. Young secured a search warrant for Tucker's house through Fourth District Court Judge John Backlund ("Judge Backlund").  (*Id.* at 28).  Sgt. Young proffered a search warrant affidavit telephonically, which provided, in pertinent part:

**Sgt. Young:**

On February 20th of this year, 2004, at approximately 4 p.m., um an armed robbery occurred at the Far West Bank, located on 800 North and approximately 1000 East. I was assigned to be the investigating officer on that armed robbery. Therefore, in pursuivant [sic] of that investigation, um, I was contacted by a confidential informant, who I interviewed ah today, March 9, 2004, at approximately 11:30 a.m. in Orem. That interview disclosed ah several people being involved in the armed robbery at Far West Bank. Led to an interview on March 9th of the person by the name of Billy Toppen [sic], who is an adult male. Who disclosed to me that he was involved in ah, the destruction of one of the getaway cars. These cars had been bought from Grand Junction, Colorado, and had been taken um, west to Tooele and burned up. That car has been located by myself and taken into our custody. And we did confirm through the VIN number the car did come from Grand junction, Colorado.

After that interview I interviewed another man by the of um [sic], Roger Gaisford. And ah, during those interviews I've been accompanied by ah, FBI Special Agent Greg Rogers who's also assigned to this case for the FBI. And during that interview Mr. Gaisford disclosed to us that he had been told um, by a Troy Hansen that Mr. Hansen had been involved in this armed robbery. And that other people had been involved as well a [sic] person by the name of Steve Bingham. That led to interview of a Steve Bingham who after being Miranda [sic], ah read his Miranda rights ah waived those, signed a statement, ah did confess to robbing the Far West Bank with one Troy Hansen. And ah, and gave information as up to the clothing description that has matched the video that I have watched of that ah armed robbery as the investigating officer.

We interviewed Mr. Troy Hansen who cooperated [sic] Mr. Bingham's statements and he did also admitted confessed [sic] to and gave full disclosure of the armed robbery at Far West Bank in Orem. Also indicated that they did ah, two bank robberies using the explosive devices, attempted robberies in Grand Junction, Colorado. Also admitted to using the explosive devices attempted [sic] robberies in Grand Junction, Colorado. Also admitted to using the explosive device near the Orem City Library as a diversion to the armed robbery at Far West. And Mr. Hansen ah also indicated another individual was involved by the name of Brian Tucker. Ah Brian Tucker according to Mr. Hansen was the mastermind and told us ah that he lived in ah Wasatch County in Canyon Meadows which actually has a Provo address of 9081 Meadow Drive, Provo, Utah is the address. That's where I am right now.

We have ah, taken Mr. Brian Tucker into custody. We have been told that during these armed robberies Mr. Tucker has drove [sic] the getaway cars ah has also used his personal truck which is a red truck with the business name "Tucko" on it. Ah which is located here in at his residence, we were also told that Mr. Tucker by

5

Mr. Hansen, and ah Mr. Stringham ah Bingham, that Mr. Tucker has been the one who made the explosive devices, also made the diversion phone calls, in Grand Junction, in Far West Bank, and also Mr. Hansen ah admitted that he and Mr. Bingham, ah along with Mr. Tucker, robbed the ah bank in Herriman, Utah, this last week taking ah approximately $78,000. Ah Mr. Bingham also confirmed that he did that. So we would ah ask the Court for permission to search the residence that we are at ah 9081 Meadow Drive um, which is the residence of Brian Tucker and the vehicle ah that are here at the residence that has been used in this crime.

**Judge Backlund:**

Alright. Thank you ah Sergeant Young um, you have the Court's authority to ah, search the home and all the outlying ah buildings, if any, and all of the property and ah any vehicles on the property . . . For ah . . . items you are looking for . . . Ah you have full authority to go ahead and ah, execute the warrant.

(Transcript of Telephonic Search Warrant Affidavit, March 10, 2004 000184-000186.)

DISCUSSION

*Probable Cause*

A magistrate judge's task in determining whether probable cause exists to support a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, (1983). "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision." *Id.* at 235.

A magistrate judge's decision to issue a warrant is entitled to "great deference." *Id.* at 236; *United States v. Artez,* 389 F.3d 1106, 1111 (10th Cir. 2004). Accordingly, the Court need only determine whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a "substantial basis" for determining that probable cause existed. *Gates,* 462 U.S. at 238-39; *Artez,* 389 F.3d at 1111.

In the instant case, defendant argues that the search warrant was not supported by probable cause for three reasons: (1) the search warrant affidavit failed to disclose that the information from Hansen was obtained after promises of leniency; (2) corroborative information was obtained in violation of the Fourth Amendment; and (3) the search warrant affidavit did not disclose contradictory information regarding Tucker's alleged involvement. The Court finds that defendant's arguments lack merit and will address each argument in turn.

a.      *Promises of Leniency*

Judge Backlund had a substantial basis for determining that probable cause existed regardless of the fact that Hansen may have been given promises of leniency and those promises were not disclosed in the search warrant affidavit. In *Illinois v. Gates,* the Supreme Court adopted a "totality of the circumstances" test to determine when information from an anonymous or confidential informant can establish probable cause. 462 U.S. at 238; *accord Artez,* 389 F.3d at 1111. The Court explained that an informant's "veracity, reliability, and basis of knowledge are all highly relevant in determining the value of his report." *Gates,* 462 U.S. at 230 (internal quotations omitted). However, "a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233. For example, an informant's "explicit and detailed description of the alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Id.*

In the instant case, Tucker argues that the search warrant affidavit was invalid because Sgt. Young failed to disclose that the information from Hansen was obtained after promises of leniency. Tucker's argument fails because even assuming Hansen received promises of leniency, Judge Backlund still had a substantial basis for determining that probable cause existed

7

because Hansen observed the crimes first-hand and offered an "explicit and detailed description of the alleged wrongdoing." *Id.*

Tucker attempts to support his position with cases in which courts have recognized that promises of leniency should be included in the warrant affidavit because it may affect the determination of an informant's reliability. *United States v. Reivich*, 793 F.2d 957, 962-63 (8th Cir. 1986); *see also United States v. Martin*, 615 F.2d 318 (5th Cir. 1980). However, a careful analysis of these cases, and *Reivich* in particular, support this Court's conclusion that the warrant affidavit supported a finding of probable cause.

In *Reivich*, officers promised a co-defendant a reduction in charges from a Class C to a Class E felony to induce him to cooperate and provide information about another defendant, Reivich. 793 F.2d at 960-61. The police officers failed to include this promise of leniency in the search warrant affidavit against Reivich. *Id.* Despite this omission, the court held that "an affidavit supplemented with the police promises of leniency to [co-defendant] still would have supported a finding of probable cause." *Id.* at 962. "[T]he judicial officer still could have found, under the totality of the circumstances, that probable cause existed" considering "the corroboration of some details and the firsthand bases of [co-defendant's] knowledge." *Id.* at 963.

Similarly, an affidavit supplemented with the promises of leniency to Hansen still would have supported a finding of probable cause. Judge Backlund could have found, under the totality of the circumstances, that probable cause existed because Hansen had first-hand knowledge of the crimes. Hansen, as well as Gaisford and Bingham, told the officers that Tucker drove a red truck with the name "Tucko" on it. Hansen implicated himself and Bingham in the Herriman robbery and corroborated Bingham's statement that Tucker met them at a 7-11 store in his truck

8

after the robbery. Hansen, as a co-defendant, had incentive to tell the truth and not risk further disfavor with the police by providing them with false statements. *See United States v. Harris,* 403 U.S. 573, 583-84 (1971) ("People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct."). Moreover, "the most common misrepresentations by arrested informants tend more to play down the informants' roles rather than to implicate uninvolved parties." *Reivich,* 793 F.2d 957, 963 (citing 1 W. LaFave, § 3.3, at 528).

The Court finds that, under the totality of the circumstances, Judge Backlund had a substantial basis for determining that probable cause existed because Hansen observed the crimes first-hand and offered an "explicit and detailed description of the alleged wrongdoing." *Gates,* 462 U.S. at 233.

b.      *Inclusion of Evidence of Tucker's Truck in the Search Warrant*

The officers did not violate Tucker's Fourth Amendment rights when they discovered his truck in plain view while executing an arrest warrant. It is well established that officers conducting an arrest of an individual in a dwelling may conduct a warrantless protective search of that dwelling when they have a reasonable suspicion that "the house is harboring a person posing a danger to those on the arrest scene." *Maryland v. Buie,* 494 U.S. 325, 336 (1990); *United States v. Flores,* 149 F.3d 1272, 1277-78 (10th Cir. 1998). The protective sweep "may extend only to a cursory inspection of those spaces where a person may be found." *Id.* at 335. "However, if police officers conducting a proper protective sweep of a dwelling come across evidence of criminal activity in plain view they may seize it, so long as that evidence is such that

9

a reasonable police officer would conclude, based on experience and the circumstances, that the item is probably incriminating." *Flores*, 149 F.3d at 1278 (additional citations omitted).

In the instant case, Tucker argues that his Fourth Amendment rights were violated when officers looked into his garage without a search warrant. However, the officers were legally on Tucker's residence executing an arrest warrant based on probable cause. The warrant was executed at approximately 1:00 a.m. – the officers, concerned for their safety and wanting to secure possible escape routes, surrounded Tucker's residence. While securing the back door, officers saw in plain view through a large garage window a red truck with the name "Tucko" on the side. Based on the information previously provided by Gaisford, Bingham, and Hansen about the truck, the officers reasonably concluded that this was incriminating evidence. *See Flores*, 149 F.3d at 1278.

Moreover, the evidence from Tucker's truck would have inevitably been discovered pursuant to the search warrant which was later issued. *See Nix v. Williams*, 467 U.S. 431, 444 (1984) (the exclusionary rule is inapplicable if the evidence inevitably would have been discovered by lawful means); *accord United States v. Grow*, 2000 WL 3336288 *11-12 (D. Utah 2000) (inevitable discovery rule applicable despite termination of consent to search because officers obtained a search warrant).

Therefore, the officers did not violate Tucker's Fourth Amendment rights when they discovered his truck in plain view while conducting a proper protective sweep of Tucker's residence pursuant to an arrest warrant.

c.      *The Exclusion of Contradictory Evidence*

Sgt. Young's exclusion of contradictory evidence in the search warrant affidavit does not

warrant suppression of the evidence because he did not intentionally or deliberately mislead

Judge Backlund in obtaining the search warrant.  It is well established that there is "a

presumption of validity with respect to the affidavit supporting the search warrant." *Franks v.*

*Delaware*, 438 U.S. 154, 171 (1978).  A defendant may suppress evidence "if the magistrate or

judge in issuing a warrant was misled by information in an affidavit that the affiant knew was

false or would have known was false except for his reckless disregard of the truth." *United*

*States v. Leon*, 468 U.S. 897, 922 (citing *Franks*, 438 U.S. 154).  However, "allegations of

negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at171.

In the instant case, Tucker alleges that Sgt. Young included deliberate falsehoods and

recklessly disregarded the truth while obtaining the search warrant.  The Court disagrees because

at most, Sgt. Young's statements were negligent or innocent mistakes which is not sufficient to

suppress evidence. *Id.*  Tucker argues that Sgt. Young falsely stated that Bingham told officers

that Tucker made the diversion phone calls during the bank robbery, and that Tucker made the

explosive devices.  During the suppression hearing, Sgt. Young acknowledged that he was

mistaken – Bingham stated that he did not know who made the diversion phone calls or who

made the explosive devices.  (*Id.* at 35-36).  Sgt. Young clarified his statements: "what I was

saying there is I was being told these things by Mr. Hansen and Mr. Bingham.  That was my

intent.  What happened there is Mr. Bingham did tell us that he did rob the Herriman bank and

the Far West Bank with Mr. Hansen." (*Id.*)  Sgt. Young did not deliberately try to mislead Judge

Backlund – at most, Sgt. Young made a negligent or innocent mistake.

11

The Court is mindful of the fact that Sgt. Young was obtaining the search warrant at 4:25 a.m. It is reasonable to conclude that Sgt. Young wanted to describe the facts sufficiently to obtain the search warrant, but do so quickly so as not to disturb Judge Backlund more than necessary at such an early hour. The Supreme Court has recognized that "affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Gates*, 462 U.S. at 235 (internal quotations omitted).

Tucker also alleges that Sgt. Young provided Judge Backlund blatantly false information when he stated that Tucker was the mastermind of the bank robbery. This is not sufficient to establish reckless disregard for the truth because there was ample evidence that Tucker played a substantial role in the robbery: Gaisford referred to Tucker as "Hansen's boss" and Hansen corroborated this information, stating that Tucker was his "boss" during his interview. Tucker also alleges that Sgt. Young gave Judge Backlund false and misleading information by stating that Tucker's red truck was used in the robberies. This was not a deliberately misleading statement because two informants gave Sgt. Young information about the red truck. Bingham told Sgt. Young that a third individual picked them up in a red truck at a 7-11 store following the Herriman robbery. Hansen also told Sgt. Young that Tucker drove a red truck with the name "Tucko" on the side. Based upon this information, Sgt. Young reasonably believed that Tucker's truck had somehow been involved in the Herriman robbery.

Moreover, even if Sgt. Young recklessly disregarded the truth, Tucker cannot show that "the remaining content of the warrant affidavit is insufficient to support a finding of probable cause." *Artez*, 389 F.3d at 1116. As discussed above, Bingham and Hansen both implicated themselves in the crimes, and Hansen provided first-hand information about Tucker's

12

involvement.  During Sgt. Young's investigation, Hansen's testimony was corroborated with testimony from four other individuals: Schiro, Gaisford, Topham, Bingham.  Accordingly, the Court finds that Judge Backlund had ample reliable, corroborated information to issue the search warrant.

### CONCLUSION

For the foregoing reasons, the Court finds that the search warrant was valid because Judge Backlund had a substantial basis for determining that probable cause existed.  Defendant Tucker's motion to suppress is DENIED.

IT IS SO ORDERED.

DATED this _15th_ day of June, 2005.

Dee Benson
United States District Judge

13