IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| BRIAN B. TUCKER,<br><br>                       Petitioner,<br><br>      vs.<br><br>UNITED STATES OF AMERICA,<br><br>                      Respondent. | **ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>Case No. 2:07-CV-999<br><br>Related Case No. 2:04-CR-170 |

Defendant Brian B. Tucker, a federal inmate appearing pro se, has moved the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## I. Background

The Defendant pled guilty, pursuant to a plea agreement, to aiding and abetting armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d) and 2; aiding and abetting using and carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2; using an explosive to commit a felony, in violation of 18 U.S.C. §§ 844(h)(1) and (2); and aiding and abetting a bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2.

The charges stem from two bank robberies. The first occurred on February 20, 2004 at the Far West Bank in Orem, Utah, where the Defendant assisted two co-defendants in obtaining approximately $2,200 by creating a diversion across town. The Defendant placed an explosive device underneath a car and called in a bomb threat to police, and called another bank and told a bank employee that he had placed a bomb in the bank building. The second occurred on March

5, 2004 at Zion's Bank in Herriman, Utah, in which the same co-defendants entered the bank and obtained roughly $78,000.  The Defendant assisted by placing a getaway car close by to assist their escape.

On March 1, 2006, the Defendant entered guilty pleas pursuant to a plea agreement.  The government agreed to recommend the 10-year minimum mandatory consecutive sentence as provided for pursuant to 18 U.S.C. § 924(c), for using a firearm in furtherance of a crime.  The government also agreed, among others, to recommend a two or three-level reduction for the Defendant's offense level under the advisory sentencing guidelines, if the Defendant demonstrated an acceptance of responsibility; to consider filing a downward departure for substantial assistance under § 5K1.1 of the sentencing guidelines; and to move pursuant to Rule 35 for a reduction in sentence, after the Defendant was sentenced and provided truthful information regarding the bank robberies, including a robbery that took place in Grand Junction, Colorado.

In preparation for sentencing, a presentence report was prepared which calculated an advisory sentencing range under the guidelines of 46-57 months' imprisonment.  The presentence report also noted that §924(c) (use of a firearm) and § 844(h) (use of an explosive) each carried a statutory minimum 10-year prison term, to be served consecutively to any other sentences imposed.  In sum, the Defendant faced a possible sentence totaling 286-297 months (roughly 24 years), if the two consecutive statutory minimum terms of 10 years were imposed consecutively to the advisory guideline sentence of 46-57 months.

Prior to sentencing, the government filed a § 5K1.1 motion for downward departure, based on the Defendant's substantial assistance, thus allowing the court to sentence below the

20-year statutory minimum.  The government also recommended the 10-year mandatory sentence for count II of the Indictment, and recommended a three-level reduction for acceptance of responsibility.  Based on the foregoing, the government recommended a total term of 15 years imprisonment.

At sentencing, the Defendant's counsel argued for a lower sentence of 10 years or less. The Court, after considering all the facts and circumstances, sentenced the Defendant to 144 months (12 years).  Furthermore, the government did not file a Rule 35 motion for downward departure, post sentencing, because the government felt that the Defendant did not provide substantial information regarding the Grand Junction robbery.

## II.  Legal Standard

A § 2255 proceeding may not be used to raise issues that should have been raised on direct appeal.  *See, e.g., United States v. Frady,* 456 U.S. 152, 165 (1982); *United States v. Allen,* 16 F.3d 377, 378 (10th Cir. 1994).  Claims in a § 2255 motion that could have been raised on direct appeal are procedurally barred unless the defendant "can demonstrate cause for his procedural default and prejudice suffered thereby, or that the failure to hear his claim would result in a fundamental miscarriage of justice." *United States v. Wright,* 43 F.3d 491, 496 (10th Cir. 1994).  A defendant may establish cause by showing that he received ineffective assistance of counsel.  *United States v. Cook,* 45 F.3d 388, 392 (10th Cir. 1995).

To prevail on a claim of ineffective assistance of counsel, the defendant must establish both that (1) the attorney's conduct fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984).  The

Defendant bears the burden of identifying specific acts or omissions that could not be considered "reasonable under prevailing professional norms."  *United States v. Salazar,* 323 F.3d 852, 857 (citing *Strickland,* 466 U.S. at 688).  There is a strong presumption "that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689 (citation omitted).  Second, the defendant must show he was actually prejudiced, that is, the outcome would likely have been different but for counsel's deficient performance.

The Court recognizes that because the Defendant is proceeding pro se the Court must construe his pleadings liberally.  *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991).  In the Defendant's brief, he argues that at least some of the issues he now raises were not raised on direct appeal because his attorney would not raise them.  "My direct appeal lawyer refused to bring up these issues on direct appeal,"  Memo. In Support, pg. 27.  The Court therefore construes Defendant's argument to mean that his attorney's failure to raise these issues on his direct appeal is evidence of his appeal attorney providing ineffective assistance of counsel.  Furthermore, "[w]hen a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue. . . . If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.'" *Cook,* 45 F.3d at 392-93 (citation omitted).

### III.  Discussion

**A.**     **Factual Basis to Support Conviction Under 18 U.S.C. § 924(c)**

The Defendant argues that there was no factual basis to support his conviction under 18

U.S.C. § 924(c) (aiding and abetting the using and carrying of a firearm in relation to a crime of violence).  "In my change of plea statement I clearly explained that I knew nothing of the weapons . . . ."  Reply Memo., pg. 3.  The evidence however suggests otherwise.

The Tenth Circuit held that § 924(c) requires "proof that the defendant (1) knew his cohort used a firearm in the underlying crime and (2) knowingly and actively participated in the underlying crime."  *United States v. Vallejos,* 421 F.3d 1119, 1125 (10th Cir. 2005).  In the present case, the Defendant admitted the following: "Hansen brandished a shotgun, and, unbeknownst to me, struck a bank employee in the head with the butt of the shotgun which caused the discharge of a shell into the wall.  Bingham possessed a handgun."  Statement in Advance of Plea, pg. 5, ¶ 11.  This knowledge satisfies the "use" requirement.  Even though the Defendant was unaware that Hansen struck a bank employee in the head, he was aware that the co-defendants carried weapons.  This knowledge meets the first requirement under § 924(c). The Defendant further acknowledged that he participated in the February 20, 2004 bank robbery by calling in two bomb threats and participating in the planning of the robbery.  *Id.* at pgs. 4-5, ¶ 11.  The Defendant thus admits to "knowledge."  Accordingly, the government set out sufficient facts that the Defendant admitted to, which demonstrate knowledge of the use of a firearm and active participation in the underlying offense.

**B.      Court's Participation in Plea Negotiations**

The Court finds that the Defendant's argument that the Court participated in plea negotiations is without merit, because the Defendant fails to offer one fact that would support this.

**C.      Court's Consideration of Coercion**

The Defendant argues that the Court failed to consider coercion as a basis to reduce his sentence.  More specifically, the Defendant claims that he was coerced because (1) one of the co-defendants threatened to kill him if he made any mistakes during the bank robbery, and (2) this co-defendant attacked him in retaliation for cooperating with the agents.  Memo. In Support, pgs. 10-11.  However, there is simply no evidence that corroborates this.  The Defendant was across town at a separate location miles away from his co-defendants during each bank robbery.  He certainly was not in imminent threat of harm and could have, at any time, terminated his involvement in the criminal plan and walked away from the event and notified the police.

The Court also notes that it has a significant amount of discretion when it comes to sentencing.  A district court has no duty to explain how each and every fact influenced the court's decision.  *See United States v. Jarillo-Luna,* 478 F.3d 1226, 1230 (10th Cir. 2007) ("[A] district court's duty to explain why it chose the given sentence does not also require it to explain why it decide against a different sentence.").  Part of what the Court considered in sentencing was the Defendant's Motion for Downward Departure dated Dec. 12, 2006, where the Defendant presented facts regarding coercion.  The government responded to this during sentencing.  *See* Sentencing Transcript, pg. 10, ¶¶ 12-15.  The Court was clearly aware of the Defendant's argument that he was coerced; furthermore, the Court properly used its discretion in fashioning a sentence of 12 years, rather than a potential sentence of 24 years, or higher.

**D.      Breach of Plea**

The Defendant argues that the government breached the plea agreement.  This issue, however, was raised on direct appeal.  *See United States v. Brian B. Tucker,* 2007 WL 3225387,

Slip Opinion, Docket No. 07-4002 (10th Cir. Oct. 26, 2007).  A defendant may not raise issues in a § 2255 motion which were already decided on direct appeal.  *See, e.g., United States v. Saenz*, 97 Fed. Appx. 836, 839 (10th Cir. 2004); *United States v. Warner,* 23 F.3d 287, 297 (10th Cir. 1994).  The Court, therefore, will not address this argument.

**E.      Facts in Presentence Report**

The Defendant argues at length that there were factual errors in the presentence report and misstatements of facts at the sentencing hearing.  At the change of plea hearing, the Defendant tried to explain his version of some of the facts.  *See* Change of Plea Transcript, pgs. 17-21.  He represented to the Court that the bomb was not real and "[i]t was not made to explode or anything . . . ."  *Id.* at pg. 17, ¶¶ 15-16.  The Defendant also claimed that he did not receive any of the money from the February 20, 2004 bank robbery.  *See id.* at pg. 19, ¶¶ 12-19.  Furthermore, the Defendant raised a dispute concerning the automobiles used in the bank robberies.  The Defendant informed the Court that he did not aid in obtaining a white car but provided money to get the blue car.  The Court asked the government about this, and the government stated that it would not impact the basis for the plea.  *See id.* at pgs. 20-21.

Although the Defendant maintains that the facts represented to the Court by the government were false, the Court cannot ignore that the Defendant nevertheless pled guilty to the charges against him.  At the change of plea hearing, the Court let the Defendant know that he was under no obligation to enter a guilty plea and that he had a right to a jury trial.  *See id.* at pgs. 24-28.  The Defendant indicated that he understood this and went ahead and entered guilty pleas.  *Id.*  Thereafter the Court stated that the pleas were "supported by an independent basis in fact containing each of the essential elements of the crimes charged in counts one, two, five and

six of the indictment." *Id.* at pg. 29, ¶¶ 2-4.

If the Defendant was not satisfied with the representation of the facts as they were presented to the Court at the change of plea hearing, the Defendant could have filed a written objection to the presentence report prior to sentencing.  "Failure to object to a fact in a presentence report, or failure to object at the [sentencing] hearing, acts as an admission of fact." *United States v. Deninno,* 29 F.3d 572, 580 (10th Cir. 1994).  The Defendant failed to raise these issues and is precluded from raising them now.

**F.      Defendant Punished for Exercising Constitutional Right**

It appears that the Defendant is arguing that because he exercised his Miranda rights by remaining silent when the agents spoke with him, he was punished, because the co-defendants received lesser sentences.  Because this is in essence the same argument he makes in subsection H, it will be discussed below.

**G.      Suppression of Mitigating Evidence**

The Defendant's argument that the government suppressed mitigating evidence, namely reports or documents concerning his cooperation, is without merit.  The government maintains that the Defendant met with one of the agents and was provided information concerning his cooperation.  *See* Memo. In Opposition, pg. 15.  Accordingly, the Court finds that the Defendant's argument lacks merit.

**H.      Prosecutorial Vindictiveness**

Compared to the two other co-defendants, who received sentences of nine years and eight and a half years, the Defendant's sentence was greater.  The Defendant claims that he was singled out compared to the other two co-defendants because he was the only one that pled to

using an explosive to commit a felony, in violation of 18 U.S.C. §§ 844(h)(1) and (2).

Furthermore, the government did not file a Rule 35 motion.  The government provides two

reasons for this.  The first is that he was not forthcoming with information concerning the

crimes, including a robbery that occurred in Grand Junction, Colorado.  The second is that both

co-defendants came forward immediately and confessed their involvement in the crimes, unlike

the Defendant who continued to minimize his involvement in the commission of the crimes.

> Tucker was not afforded the same sentence as the cooperating co-defendants due to the degree of cooperation he provided.  The co-defendants came forward, offered to testify and were rewarded for their assistance.  As [a] result, they were offered a reduced sentence for their substantial assistance.  Tucker offered to cooperate but not to the degree of the co-defendants and is not subject to the same sentencing consideration.

*Id.* at pgs. 14-15.  *See also* Government's Motion for Downward Departure Pursuant to U.S.S.G.

§ 5K1.1 dated Sept. 18, 2006 (outlining the Defendant's assistance and information he

provided). Yet the Defendant argues that he "provided detailed information on all of those

involved in that incident but Colorado prosecutors were unwilling to bring indictments against

any of those involved."  Reply Memo., pg. 2.

The Court agreed with the government at sentencing that the level of cooperation

provided by the Defendant was not "substantial":

> I find this sentence consistent with the other two sentences.  I do think it is worth a couple of extra years for your lack of coming forward, and especially with the generosity of the government with the substantial assistance motion that they have made.  I could sit here and very easily in this case have decided not to grant any departure based on that motion.  I frankly could make a very good, strong position that you have not rendered substantial assistance.

Sentencing Transcript, pg. 17, ¶¶ 8-16.

The Court also points out that the fact that Colorado prosecutors did not bring indictments is not the overriding factor as to whether the Defendant provided substantial assistance. As a whole, the Court found that the Defendant did not provide substantial assistance. The Court acknowledges that the Defendant is right that "the court only knows what gov. or defense tells it." Reply Memo., pg. 6. But part of this record included the Defendant's Motion for Downward Departure, Defendant's Pre-Sentencing Memorandum, together with the government's responses to these motions.

In light of the information the Court has been presented with, it was reasonable, based on the degree of the Defendant's cooperation and assistance, for the government to file a motion for downward departure and not file a Rule 35 motion. Furthermore, it was reasonable that the Court fashioned the sentence it did in light of the facts and circumstances presented in the pre-sentence report.

Finally, the Court reminds the Defendant that he "has, of course, no constitutional right to a plea bargain on his own terms." *Martinez v. Romero,* 626 F.2d 807, 809 (10th Cir. 1980). The Defendant states that had he "in fact gone to trial he would have been acquitted of 924c thus leaving the potential sentence at 14 years, only 2 years more than he received, and possibly being aquitted [sic: acquitted] of all the charges depending on how the jury perceived the coercion defense." Reply Memo., pg. 7. While this statement is entirely speculative, what the Defendant misunderstands is that he did in fact choose to forego a trial by jury and enter into a plea bargain. "It is the prosecutor's prerogative to offer a 'package deal,' or no deal at all." *United States v. Gonzales,* 65 F.3d 814, 823 (10th Cir. 1995). It was within the government's discretion, which the Court confirmed, to offer the plea bargain that it did.

I.      **Illegal Seizure and Restitution**

At the sentencing hearing, the Court instructed the government to ensure that all monies held in evidence should be applied to restitution.  Sentencing Transcript, pg. 20, ¶¶ 19-25.  The letter dated February 28, 2007 from Assistant United States Attorney Carlos A. Esqueda to the Defendant ("February 28, 2007 Letter") reflects that the correct amounts were credited towards restitution.  The Court therefore finds that the Defendant's argument that there has been an illegal seizure and restitution is without merit; moreover, it has no bearing on whether the Defendant was sentenced illegally.

The Defendant also argues that except for the computer, his personal property is still in the custody of the government.  The Defendant was, however, instructed to contact Special Agent Greg Rogers to coordinate return of any personal belongings.  *See* February 28, 2007 Letter.  The Defendant therefore must take the initiative to contact Agent Rogers about receiving the rest of his belongings.

K.      **Ineffective Assistance of Counsel**

The Defendant was represented first by Jack Morgan and then Frank Berardi throughout plea negotiations and sentencing.  Attorney Scott Wilson represented the Defendant on his direct appeal.  The Defendant argues that each of these attorneys form the basis of an ineffective assistance of counsel claim.

While attorney Jack Morgan represented the Defendant, he committed suicide.  This seems to be the focus of the Defendant's complaint against Mr. Morgan.  The Defendant states that "it is evident that Mr. Morgan no longer wished to represent me, and his performance fell well below the standard for representation."  Memo. In Support, pg. 25.  The Defendant,

11

however, offers no factual support that either (1) Mr. Morgan committing suicide supports an ineffective assistance of counsel claim, or (2) that Mr. Morgan's performance fell below a reasonable standard of representation.  The Court recognizes that because the Defendant is proceeding pro se the Court must construe his pleadings liberally.  *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991).  The Court cannot, however, "supply additional facts, [or] construct a legal theory for plaintiff that assumes facts that have not been pleaded."  *Dunn v. White,* 880 F.2d 1188, 1197 (10th Cir. 1989).  Accordingly, the Defendant's claim with respect to Mr. Morgan fails.

In contrast, the Defendant supplies a long list of facts surrounding Frank Berardi's representation.  Mr. Berardi allegedly "failed to inform [him] of possible defences [sic: defenses], the necessary evidence, or the fact that it was unconditional plea."  Memo. In Support, pg. 25.  He states that he read his plea agreement for the first time at the change of plea hearing. *Id.*  He also claims that at the change of plea hearing, Mr. Berardi took the Defendant off to the side and said, "Don't fuck this up, this is the deal, it doesn't matter if it is correct or not."  *Id.* The Defendant states that from that point on at the hearing, he answered "yes" to the questions. *Id.*

The Defendant says that he tried to get Mr. Berardi to do many things prior to sentencing, including filing a downward departure motion and trying to get affidavits regarding coercion.  *Id.* at 25-26.  Apparently because Mr. Berardi did not comply with the Defendant's request, the Defendant's father filed a motion that was based on the alleged coercion.  *Id.* at 26. Furthermore, Mr. Berardi allegedly failed to make certain objections at sentencing that the Defendant wanted him to make.  *Id.*  Specifically, Mr. Berardi did not object to the inclusion of

the § 924(c) charge.  Reply Memo., pg. 4.

Finally, the Defendant claims that Mr. Berardi is addicted to methamphetamine, and that after talking with others, the Defendant found out that he has been known to accept meth in exchange for representation.  *Id.* at 4; *see* Brian Tucker's Statement; Brad Richins' Statement; Bradley Allen's Statement.  This appears to be an explanation for Mr. Berardi's failure to communicate effectively with the Defendant and respond to his requests, although the Defendant provides no evidence that drug use directly impacted his own case.

Again, in order for the Defendant to prevail on an ineffective assistance of counsel claim, he must demonstrate that his attorney's "performance was deficient" and "fell bellow an objective standard of reasonableness."  *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). In applying this test, we give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  The Tenth Circuit, in *Bullock v. Carver,* 297 F.3d 1036 (10th Cir. 2002), explained the strong presumption that counsel acted reasonably.  "[T]he general presumption of objective reasonableness requires a petitioner to overcome the presumption that, under all the circumstances, the challenged action *might* be considered sound trial strategy."  *Id.* at 1046 (internal quotations omitted).  "[T]he *Strickland* decision places upon the defendant the burden of showing that counsel's action or inaction was not based on a valid strategic choice."  *Id.* at 1047 (internal quotations omitted).  In fact, "strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong."  *Anderson v. Attorney General of Kansas,* 425 F.3d 853, 859 (10th Cir. 2005) (citation omitted).

Despite all of the complaints the Defendant makes about Mr. Berardi, the Court finds that the Defendant did not overcome the strong presumption that Mr. Berardi's performance met a standard of reasonableness.  Rather, a review of the record demonstrates that because of counsel's representations and arguments, particularly at the sentencing hearing, the Defendant received a reduced sentence.  After hearing arguments from Mr. Berardi and the government, the Court rejected the government's recommendation of a 15-year sentence and adopted a sentence of 12 years, which more closely resembled what defense counsel had requested.  Furthermore, Mr. Berardi secured a favorable negotiated plea after the government indicated it would go to trial and obtained a downward departure motion from the government pursuant to § 5K1.1 based on substantial assistance, despite the Defendant's tenuous assistance.  The Defendant fails to show that Mr. Berardi was deficient below an objective standard of reasonableness.

More importantly, assuming that even some of the actions or inactions taken by Mr. Berardi did fall below an objective standard of reasonableness, the Defendant was not prejudiced by the alleged deficiency of performance.  *See Strickland,* 466 U.S. at 687-88.  The Defendant faced a potential sentence of 24 years, yet he was sentenced to 12 years.  Even if the Defendant's unsupported charges were true (i.e., the alleged comment made by Mr. Berardi to the Defendant at the change of plea hearing), such conduct did not prejudice the Defendant.  "The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *United States v. Nguyen,* 413 F.3d 1170, 1181 (10th Cir. 2005).  The Defendant in this case did receive a just result.  But for Mr. Berardi's zealous representation, the Defendant would have likely not received the favorable plea and sentence that he did.  Thus, the Court finds that

14

the Defendant cannot make out a claim of ineffective assistance of counsel against Mr. Berardi.

Finally, the Court turns to the Defendant's appellate counsel, attorney Scott Wilson. The Defendant complains that "Scott Wilson was told repeatedly to include any and all issues in direct appeal but failed to follow client directions." Memo. Reply, pg. 4. In the Defendant's direct appeal, Mr. Wilson raised the issue of whether the government was obligated to recommend a 10-year sentence under the terms of the plea agreement. In a letter dated July 30, 2007 from Mr. Wilson to the Defendant, Mr. Wilson states that he "carefully considered the other arguments . . . but could not reasonably argue them on direct appeal." *See* Memo. In Support, Exhibit C.

Under a claim of ineffective assistance of appellate counsel, "the Sixth Amendment does not require an attorney to raise every non-frivolous issue on appeal." *Caballero v. United States,* 2006 WL 36949, at *6 (D. Utah Jan. 5, 2007) (relying on *Banks v. Reynolds,* 54 F.3d 1508, 1515 (10th Cir. 1995)). "[A]ppellate counsel is under no obligation to raise all issues, but may pick and choose so as to maximize the chances of a successful appeal." *United States v. Chorin,* 2008 WL 450200, at *13 (E.D. Pa. Feb. 15, 2008) (citing *Smith v. Robbins,* 528 U.S. 259, 288 (2000)). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Chorin,* 2008 WL 4050200, at *13 (citing *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)). The Court is satisfied with Mr. Wilson's representation of the Defendant on his direct appeal, and finds that Mr. Berardi's performance fell within a standard of reasonableness. In sum, the Defendant's claim of ineffective assistance of counsel is denied.

The Court DENIES Defendant's motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255.  The Defendant's motions for an evidentiary hearing and to make a court appearance via phone are also DENIED.

It is so ORDERED.

DATED this 17th day of March, 2008.

Dee Benson
United States District Judge